CLARISSA PIKE *vs.* ORSELO GOODNOW.

If the mortgagor of an entire lot of land subsequently mortgages a portion of it to A. with full covenants of warranty, and then quitclaims the residue to B., and afterwards quitclaims the first portion to A., who takes the conveyance with notice of the title of B., and the interest conveyed by the last deed to A. is equal in value to the sum due on the first mortgage upon the entire lot, it is the duty of A. and his grantees to discharge that mortgage, without contribution from B. And if A. pays the amount due on the first mortgage and takes an assignment thereof, he cannot maintain an action to foreclose the same against B.

If a mortgaged lot of land is sold to different purchasers, subject to the mortgage, and the purchaser of one portion pays the interest on the entire sum secured by the mortgage for more than twenty years, without calling on the purchaser of the other portion for contribution, and the latter thereafter sells his portion with warranty of title, the former cannot, upon purchasing the mortgage, enforce it against the grantee of the latter.

WRIT OF ENTRY, dated January 9th 1866, to foreclose a mortgage. The declaration contained two counts, the first being upon a lot of land containing one acre and ten rods, and the second upon a lot containing sixty acres and including the one acre and ten rods.

At the trial in the superior court, before *Vose,* J., the following facts appeared:

On the 21st day of May 1827 John Heard mortgaged the sixty acre lot, including the one acre and ten rods, to the Massachusetts Hospital Life Ins. Co. to secure the sum of $300 He subsequently paid $100 upon this debt.

On the 4th day of April 1838 Heard mortgaged to Abigail Millis the whole of the sixty acre lot except the one acre and ten rods, to secure the sum of $200. The premises were

described in this mortgage as bounded on land occupied by Francis Steadman; and as being "subject to a mortgage to the Massachusetts Hospital Life Ins. Co." for $200. The mortgage contained full covenants of warranty against all persons.

On the 16th of November 1840 Heard quitclaimed to Francis Steadman the one acre and ten rods, making no reference to either of the former mortgages. This deed was not recorded till August 15th 1866.

On the 6th of April 1842 Heard quitclaimed to Abigail Millis the land covered by his mortgage to her, making no mention of any former conveyance, and describing the premises as before.

On the 5th of February 1852 Abigail Millis died, and the plaintiff inherited the estate mortgaged and quitclaimed to her as aforesaid.

On the 24th of February 1865 the plaintiff received an assignment of the original mortgage to the Massachusetts Hospital Life Ins. Co., for which she paid $200.

On the 10th of March 1865 Francis Steadman conveyed by deed of warranty the one acre and ten rods to the defendant.

The plaintiff paid the interest on the mortgage to the Massachusetts Hospital Life Insurance Co. for twenty-six years before it was assigned to her. The premises were the home of Abigail Millis after 1842.

Upon these facts, the judge ruled that the action could not be maintained, and directed a verdict for the defendant, which was accordingly rendered. The plaintiff alleged exceptions.

*W. Griswold*, for the plaintiff.

*D. Aiken*, for the defendant.

Hoar, J. The statement of the facts in this case is somewhat complicated; but a careful examination of them will show that, upon the application of familiar principles, the decision at the trial must be supported.

The legal title of the plaintiff is sufficient to maintain her action; but it being a writ of entry to foreclose a mortgage, if there is nothing equitably due to her for which a conditional judgment can be rendered, the defendant is entitled to

judgment. *Wade* v. *Howard,* 11 Pick. 289. *Burke* v. *Miller* 4 Gray, 114.

The mortgage to the Massachusetts Hospital Life Insurance Company, which has come to the plaintiff by assignment, covered the whole tract of land described in the second count, including that described in the first count, which is the part to which the defendant claims a title. The plaintiff, as owner of that mortgage, is entitled to enforce it against the defendant, either for payment of the whole mortgage debt, or for contribution, unless there are equities between the parties which will throw the whole burden upon her. The first conveyance in point of time by Heard, the mortgagor, was by a second mortgage of the sixty acres to Abigail Millis, under whom the plaintiff claims, in 1838. It excluded the lot now owned by the defendant, bounding the premises conveyed upon it as land " occupied by Steadman." It also embraced some other land not covered by the original mortgage. The mortgage was made subject to the prior mortgage, but contained full covenants of warranty. As it was merely a mortgage, and contained these covenants, we do not think it imposed any obligation upon the grantee to assume or pay the previous mortgage ; and upon this conveyance, therefore, Heard remained liable to pay the whole if the first mortgage debt without contribution. The defendant's grantor, Steadman, when he took his conveyance from Heard in 1840, took no greater right than Heard. *Chase* v. *Woodbury,* 6 Cush. 143. *George* v. *Wood,* 9 Allen, 80, and cases there cited. But upon the conveyance of Heard to Steadman, the equity of redemption from the second mortgage, retained by Heard, was liable in the first instance for the whole of the first mortgage debt; and when Heard released this equity of redemption to Abigail Millis in 1842, she succeeded to his liability in this respect, if she had notice of the previous conveyance to Steadman. The deed from Heard to Steadman was not recorded ; but the release to Millis bounds her upon " land of Francis Steadman," which was equally effective as notice to her of his title. *George* v. *Kent,* 7 Allen, 16.

When the plaintiff inherited the title of Millis, and succeeded

to her rights and obligations, the duty of contributing toward the payment of the original mortgage stood thus : 1. The plaintiff, as owner of the equity of redemption of the second mortgage, was first liable for the full amount; 2. Steadman, as the next previous grantee, was liable to make good any deficiency in the value of that equity ; and 3. The plaintiff, as owner of the second mortgage, would be the last to be called on.

If, therefore, the value of the equity of redemption which the plaintiff inherited was equal in value to the sum due on the original mortgage, she was bound, as between her and the defendant, to pay it ; and, having paid and taken an assignment of it, as she has no claim for contribution, cannot maintain this action. It is not expressly found as a fact that her equity of redemption was of sufficient value ; but no evidence was offered to show that it was not, and the inference from all the evidence would seem to be that it was. Nothing appearing to be due to her from the defendant's land, her taking a conveyance of the mortgage would operate as a merger and satisfaction of it.

But there is another consideration which we think in equity would lead to the same result. For twenty-six years she paid the whole interest on the first mortgage, without calling on Steadman for contribution. If he or his grantee is liable now to contribute to the payment of the principal, the same liability existed during the whole of that time to contribute to the payment of the interest. But Steadman was never called upon, and for more than twenty years had no reason to suppose that his land was regarded by the plaintiff or by Millis as subject to such a burden ; and in 1865 he conveyed to the defendant with full covenants of warranty. Under these circumstances we do not think equity will allow the plaintiff now to assert against the defendant the claim which lies at the foundation of the suit. After such a lapse of time by analogy to the statute of limitations, it would seem that a court of equity should conclusively presume that the sufficiency of the plaintiff's estate primarily liable had been fixed and agreed between the parties. We do not mean to intimate that the holder of the original mortgage, having received the payments of interest exclusively from the

owner of a part of the equity of redemption for any number of years, would by that fact alone be precluded from subjecting to a foreclosure the whole property which his mortgage covered. His interest being regularly paid by a person in possession of a part of the land, he would have no reason to know or inquire . from whom it came, or to know what grants of the estate had been made by the mortgagor. But between the grantees of the equity of redemption in separate parcels of the land, it is a question from the beginning of the existence of equities which may be determined by agreements, or valuations of property which lapse of time may make difficult of proof. And their conduct in respect to the interest has a direct bearing upon the question who is liable for the payment of the principal. *Black River Savings Bank* v. *Edwards*, 10 Gray, 397.

*Exceptions overruled.*